**R. W. KING et ux., Appellants,**

v.

**King William SMITH, Appellee.**

**No. 4527.**

Court of Civil Appeals of Texas, Eastland.

May 19, 1972.

C. J. Eden, Breckenridge, for appellants.

Elliott, Bevill & Clark, Tom R. Bevill, Breckenridge, for appellee.

McCLOUD, Chief Justice.

This case involves the obstructing of an alleged public road. The road is approximately one and one-half miles long and is located on property that is either owned or controlled by King William Smith. Smith erected an iron pipe gate across the road. R. W. King and wife, Laura King, filed suit to enjoin Smith from obstructing the road. The jury found that the road had never been dedicated as a public road by Smith or his predecessors in title. A take nothing judgment was entered. R. W. King and wife, Laura King, have appealed. We affirm.

Appellants own land adjacent to appellee's property and they on occasion use the road in question when going from their land to a paved farm to market road.

■ Appellants complain first of the trial court's failure to submit a requested special issue. The record contains no objections to the court's charge nor does it disclose that the special issue was tendered or requested. The point is overruled. Rule 279, Texas Rules of Civil Procedure.

■ Appellants complain next of jury misconduct. One complaining of jury misconduct has the burden to prove not only the overt act of misconduct, but also that it was material misconduct, and from the record as a whole that injury probably resulted. Rule 327, T.R.C.P.; Fountain v. Ferguson, 441 S.W.2d 506 (Tex.Sup.1969).

Appellants argue that the juror Key was prejudiced and biased. They say that statements made by Key while the jury was deliberating conclusively establishes that such juror was not fair and impartial. We disagree. The juror's statements concerning the credibility of the witnesses did not constitute material misconduct. Juror Harris testified that juror Key stated during jury deliberations that when she heard Mr. Smith testify "she made up her mind how she was going to vote . . . She was just hardheaded and she wasn't going to change." When Harris was asked if he heard anyone make any statements concerning Sam Jones, he stated that juror Key "just didn't like him and didn't believe him."

The Court in Kendall v. Southwestern Public Service Company, 336 S.W.2d 770 (Tex.Civ.App.—Amarillo 1960, no writ) stated:

"The juror was a judge of the credibility of the witnesses and had the right under the circumstances to take the position in the jury room that the evidence before them showed Kendall was not telling the truth. Dallas Ry. & Terminal Co. v. Burns, Tex.Civ.App., 60 S.W.2d 801; Dancy et al. v. Peyton et al., Tex.Civ. App., 282 S.W. 819."

We think the cases cited by appellants are distinguishable. In each case the Court was concerned with unsworn testimony given by a juror who was attacking

the veracity of a witness. In Storey v. Zuniga, 254 S.W.2d 415 (Tex.Civ.App.— San Antonio 1952, writ ref., n. r. e.) the juror stated that the witness "had deserted his wife and two children", and in Wallace v. Partin, 345 S.W.2d 943 (Tex.Civ.App. —Austin 1961, no writ) the juror stated that she had heard that the witness was as "crooked as a barrel of snakes". Juror Harris did not testify as to any statements made by juror Key concerning the witness Sam Jones. He stated only that Key "just didn't like him and didn't believe him!"

Appellants' attorney asked the jury panel as a whole during voir dire examination if any of the prospective jurors were prejudiced or biased against the State or County acquiring a roadway over private land without payment to the owner for the land. Appellants argue that the juror Groseclose stated during deliberations that the Groseclose land had been measured and they did not have as much as the deed called for because a public road crossed the land and they were paying taxes on the land used as a public road. The juror stated "she did not like to pay taxes on a public road." Appellants argue that such statement injected extraneous matter before the jury and constituted improper communication with the jury. We disagree. The juror stated that she did not like to "pay taxes" on public roads which crossed her land. The statement does not indicate that the juror was untruthful in her answer on voir dire examination.

■■■ We hold that the statements made by jurors Key and Groseclose do not constitute jury misconduct. Furthermore, if we should be in error as to such statements not constituting overt acts of misconduct, we further hold that appellants have not demonstrated that injury probably resulted as a result of such statements. Rule 327, T.R.C.P.

Appellants further contend that the trial court erred in overruling their motion for judgment notwithstanding the verdict.

They say that the evidence established as a matter of law that the road in question had been dedicated as a public road. We disagree.

The appellee, Smith, testified that the road in question originated as an oil field road; that he owned none of the minerals; that the road was constructed by oil companies around 1919 or 1920; that he had observed people who "had business" in there using the road; that he never did attempt to stop these people; that he couldn't keep them out anyway because they had a right to go in there under the lease; that he had attempted to keep trespassers out; that the road was never used as a school bus route; that the wells have been plugged and there are no producing wells in the area now.

Bill Mobley testified that he was land manager for Petroleum Corporation of Texas; that as land manager he was familiar with oil and gas leases; that there is an implied right to build roads under oil and gas leases.

R. B. O'Brien testified that he was a pumper from 1924 to 1948 in the area; that the road originated as an oil field road; that the company he worked for maintained the road; that they drug it occasionally with a half joint of pipe behind a truck; that he served on the school board at Eliasville and that the board would not allow the school bus driver to use the road; that the road was very narrow and had one bad creek crossing that was rocky and bad to cross with a truck.

Truman Mayes, County Commissioner of Young County, testified that he lived near Eliasville; that he would classify the road as a pasture road; that sometimes roads are maintained by county commissioners behind gates but this does not make it a public county road.

While discussing an oil field road, the Court in Eastex Wildlife Conservation Association v. Jasper, 450 S.W.2d 904 (Tex.

Civ.App.—Beaumont, 1970, writ ref., n. r. e.) said:

> "Plaintiffs labored under the burden of making proof that there was 'a clear and unequivocal intention on the part of the landowner to dedicate the same to public use * * *' [which] 'must be shown by something more than an omission or failure to act or acquiesce on the part of the owner.' (Greenway Parks Case [Greenway Parks Home Owners Ass'n v. City of Dallas, Tex.], supra, 312 S. W.2d [235] at 241)."

Appellants cite O'Connor v. Gragg, 161 Tex. 273, 339 S.W.2d 878 (1960) as authority for their position. The case is distinguishable. There the Court was concerned with whether there was any evidence in support of a jury finding that a road had been dedicated. No witness was able to state the exact origin of the user of the roadway by the public nor the ownership of the land at the time of such origin. The Court applied the rule that a presumption of acquiescence is raised when the origin of the user by the public and the ownership of the land at that time are shrouded in obscurity, and no evidence exists to show the intention of the owner in allowing the use.

In the instant case there is evidence that the road originated as an oil field road and was used by oil field workers. The jury found that the road had not been dedicated as a public road. We do not think that the evidence established as a matter of law that the road had been dedicated as a public road.

Also we have considered the entire record and are of the opinion that the finding of the jury is not against the overwhelming weight and preponderance of the evidence so as to be clearly wrong and manifestly unjust. In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

We have considered all of appellants' points of error and all are overruled. The judgment of the trial court is affirmed.